UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BILJANA METROFF, individually, and on behalf of all others similarly situated,<br><br>　　Plaintiff,<br><br>v.<br><br>AT WORLD PROPERTIES, LLC d/b/a @properties,<br><br>　　Defendant. | Case No. 1:20-cv-07050 |

## CLASS ACTION COMPLAINT

**NOW COMES** BILJANA METROFF, by and through her undersigned counsel, complaining of Defendant AT WORLD PROPERTIES, LLC d/b/a @properties, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. § 227 *et seq.*

2. "The primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Parchman v. SLM Corp.*, 896 F.3d 728, 738-39 (6th Cir. 2018) citing Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394 (1991).

3. As the Supreme Court recently observed, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

1

5. Venue in this district is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

6. BILJANA METROFF ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided in this federal jurisdiction.

7. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

8. AT WORLD PROPERTIES, LLC d/b/a @properties ("Defendant") is a corporation organized under the laws of the state of Illinois.

9. Defendant is a real estate brokerage company that touts itself as "one of the top 11 residential brokers in the U.S. by sales volume, the #1 real estate firm in the city of Chicago, and the second largest brokerage firm on Chicago's North Shore."[1]

10. Defendant maintains its principal place of business in Chicago, Illinois.

11. Defendant is a "person" as defined by 47 U.S.C. § 153(39).

## GENERAL ALLEGATIONS

12. Defendant develops marketing campaigns using a combination of sales channels, with an emphasis on outbound telemarketing.

13. Upon information and belief, Defendant utilizes third party vendors to market its real estate services.

14. Defendant's vendors are essential to its telemarketing campaigns.

15. Defendant's ability to generate revenue depends significantly on its access to high-quality vendors.

---

[1] https://www.atproperties.com/about-us (last accessed November 30, 2020)

16. Upon information and belief, Defendant's outbound telemarketing efforts include the use of an automatic telephone dialing system ("ATDS") to solicit consumers within the state of Illinois.

17. The Federal Trade Commission ("FTC") has held that a basic function of an ATDS is the ability to dial thousands of numbers in a short time period.

18. Upon information and belief, Defendant uses technology that has the capacity to produce telephone numbers using a random or sequential number generator in order to contact as many consumers as possible to market its services to.

19. An ATDS allows Defendant's telemarketing agents to only communicate with consumers who answer their phone.

20. Consequently, Defendant's unsolicited telemarketing calls shift the burden of wasted time to consumers.

## FACTUAL ALLEGATIONS

21. At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the cellular telephone number ending in 6169.

22. At all times relevant, Plaintiff's number ending in 6169 was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

23. At all times relevant, Plaintiff was financially responsible for her cellular telephone equipment and services.

24. On November 4, 2020 at 3:37 p.m. CST, Defendant placed an unsolicited telemarketing call to Plaintiff's cellular phone from the phone number (248) 892-6223.

25. Upon answering Defendant's call, Plaintiff was met by a lengthy period of dead air followed by a beep prior to being connected to a live representative.

26. After being connected to a live representative, Plaintiff was greeted by "Tamara," a representative of Defendant.

27. Tamara indicated that she was calling Plaintiff to do a "market check in."

28. In response, Plaintiff asked Tamara how she obtained Plaintiff's phone number.

29. In response, Tamara stated that it is easy to locate anyone's information nowadays.

30. Subsequently, Plaintiff informed Tamara to cease contacting her as she already has a real estate agent and is not interested in Defendant's services.

31. At no time did Plaintiff provide Defendant with express written consent to place telemarketing calls to her cellular phone.

32. Plaintiff significantly values her privacy and solitude.

33. Defendant's unsolicited telemarketing phone call has caused Plaintiff actual harm, including but not limited to, aggravation that accompanies unsolicited telemarketing phone calls, increased risk of personal injury resulting from the distraction caused by unsolicited telemarketing phone calls, wear and tear to Plaintiff's cellular phone, intrusion upon and occupation of Plaintiff's cellular telephone, temporary loss of use of Plaintiff's cellular phone, invasion of privacy, loss of battery charge, loss of concentration, nuisance, and wasting Plaintiff's time.

## **CLASS ALLEGATIONS**

34. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

35. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class") defined as follows:

> All persons residing in the State of Illinois: (a) to whom Defendant and/or a third party acting on Defendant's behalf, made one or more non-emergency phone call(s); (b) promoting Defendant's services; (c) to his/her cellular telephone number; (d) using an automatic telephone dialing system; (e) without the prior express written consent of the called party; (f) at any time in the period that begins four years before the date of the filing of the original complaint through the date of class certification.

36. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

**A.    Numerosity**

37. The exact number of members of the Putative Class are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable.

38. Upon information and belief, Defendant made phone calls to thousands of consumers who fall within the definition of the Putative Class.

39. Members of the Putative Class can be objectively identified from records of Defendant and any affiliated marketers/vendors to be gained in discovery.

**B.    Commonality and Predominance**

40. There are many questions of law and fact common to the claims of Plaintiff and the claims of the members of the Putative Class, and those questions predominate over any questions that may affect individual members of the Putative Class.

**C.     Typicality**

41.     Plaintiff's claims are typical of members of the Putative Class because Plaintiff and members of the Putative Class are entitled to damages as result of Defendant's conduct.

**D.     Superiority and Manageability**

42.     This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

43.     The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

44.     By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

45.     Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E.     Adequate Representation**

46.     Plaintiff will adequately and fairly represent and protect the interests of the Putative Class.

47.     Plaintiff has no interests antagonistic to those of the Putative Class, and Defendant has no defenses unique to Plaintiff.

48.     Plaintiff has retained competent and experienced counsel in consumer class action litigation.

## **CLAIM FOR RELIEF**

### COUNT I:
### Telephone Consumer Protection Act (47 U.S.C. §227 et seq.)
### (On behalf of Plaintiff and the Members of the Putative Class)

49. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

50. Among other things, the TCPA prohibits certain calls to wireless and residential numbers unless the caller has the prior express consent of the called party. 47 U.S.C. §227(b)(1)(A).

51. Under the TCPA consent rules, some types of calls require prior express *written* consent, while other types of calls do not require that the consent be in writing.

52. "Prior express *written* consent" is required for (a) all telemarketing/promotional calls/texts placed using an ATDS to wireless numbers, and (b) all artificial or prerecorded telemarketing/promotional voice calls to wireless and residential numbers.[2]

53. The TCPA consent rules define "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an ATDS or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

54. Defendant and/or a third party acting on Defendant's behalf placed or caused to be placed an unsolicited telemarketing phone call to Plaintiff's cellular telephone number ending in

---

[2] 47 C.F.R. §§64.1200(a)(2) and (a)(3).

6169, utilizing an ATDS, without Plaintiff's prior express written consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

55. Upon information and belief, based on the lengthy period of dead air that greeted Plaintiff upon Plaintiff answering Defendant's call and the audible beep prior to being connected to a live representative, Defendant employed an ATDS to place a call to Plaintiff's cellular telephone.

56. Upon information and belief, the ATDS employed by Defendant transfers the call to a live representative once a human voice is detected, hence the period of dead air and beep prior to being connected to a live representative.

57. Upon information and belief, the system employed by Defendant to place the unsolicited telemarketing call to Plaintiff's cellular phone produced Plaintiff's telephone number using a random or sequential number generator as Plaintiff never provided her phone number to Defendant or otherwise had any form of relationship with Defendant.

58. Upon information and belief, the system employed by Defendant to place the phone call to Plaintiff's cellular phone has the *capacity* – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

59. Upon information and belief, it is a systemic practice of Defendant to call consumers without their prior express written consent; a practice designed to maximize profits at the expense of consumers.

60. As a result of Defendant's violations of the TCPA, Plaintiff and members of the Putative Class are entitled to receive at least $500.00 in damages for each such violation.

61. As a result of Defendant's knowing and willful violations of the TCPA, Plaintiff and members of the Putative Class are entitled to receive up to $1,500.00 in treble damages for each such violation.

**WHEREFORE**, Plaintiff, on behalf of herself and the members of the Putative Class, requests the following relief:

a. an order granting certification of the proposed class, including the designation of Plaintiff as the named representative, and the appointment of the undersigned as Class Counsel;

b. an order finding that Defendant violated the TCPA;

c. an order enjoining Defendant from placing or causing to place further violating calls to consumers;

d. an award of $500.00 in damages to Plaintiff and the members of the Putative Class for each such violation;

e. an award of treble damages up to $1,500.00 to Plaintiff and the members of the Putative Class for each such violation; and

f. an award of such other relief as this Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: November 30, 2020            Respectfully submitted,

**BILJANA METROFF**

By: */s/ Mohammed O. Badwan*

Mohammed O. Badwan, Esq.
Sulaiman Law Group, Ltd.
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
(630) 575-8180
mbadwan@sulaimanlaw.com